# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NEVADA CEMENT COMPANY LLC,<br><br>*Petitioner*,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and MICHAEL S. REGAN, Administrator, U.S. Environmental Protection Agency,<br><br>*Respondents*, | No. 23-682 |
| STATE OF NEVADA,<br><br>*Intervenor*. | |

## JOINT NOTICE OF SETTLEMENT AGREEMENT

| | |
|---|---|
| Megan Berge<br>Sarah Douglas<br>BAKER BOTTS L.L.P.<br>700 K Street N.W.<br>Washington, D.C. 20001<br>(415) 291-6233<br><br>J. Mark Little<br>BAKER BOTTS L.L.P.<br>910 Louisiana Street<br>Houston, TX 77002<br>(713) 229-1489<br><br>*Attorneys for Nevada Cement Co.* | Todd Kim<br>  *Assistant Attorney General*<br>Alexandra L. St. Romain<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>Environmental Defense Section<br>P.O. Box 7611<br>Washington, D.C. 20044<br>alexandra.st.romain@usdoj.gov<br><br>*Counsel for Respondent U.S. Environmental Protection Agency and Michael S. Regan* |

Petitioner Nevada Cement Company ("NCC") and Respondents U.S. Environmental Protection Agency and Michael S. Regan notify the Court that they have entered the attached Settlement Agreement and request that the administrative closure period for the above-captioned challenge be continued pending implementation of the Settlement Agreement.

1. NCC filed a Petition for Review on April 14, 2023, challenging EPA's disapproval of Nevada's State Plan addressing requirements under the Good Neighbor Provisions of the Clean Air Act, 42 U.S.C. § 7410(a)(2)(D)(i)(I), for the 2015 8-hour ozone national ambient air quality standards. *See* Petition for Review, Dkt. 1.1.

2. On May 10, 2023, NCC filed a motion to stay EPA's disapproval of the Nevada State Plan. Dkt. 9.1. This Court granted the stay motion on July 3, 2023. Dkt. 27.1.

3. The State of Nevada was granted leave to intervene on behalf of Petitioner on July 3, 2023. Dkt. 27.1.

4. On September 29, 2023, EPA published an Interim Final Rule addressing this Court's stay order and staying the effectiveness of EPA's Federal Plan as to sources in Nevada. 88 Fed. Reg. 67,102 (Sep. 29, 2023).

5. Consistent with Circuit Rule 33-1, the Parties contacted the Ninth Circuit Mediation Office on November 28, 2023, to facilitate voluntary resolution of this challenge.

6. The Circuit Mediation Office conducted an assessment conference on November 30, 2023, and the Parties agreed to proceed with mediation. Dkt. 39.1.

7. On December 6, 2023, the Court temporarily closed the docket in Case No. 23-682 for administrative purposes to facilitate ongoing mediation. Dkt. 40.1.

8. NCC and Respondents reached agreement on a proposed Settlement Agreement in April 2024. Section 113(g) of the CAA, 42 U.S.C. § 7413(g), requires EPA to provide notice in the *Federal Register* and an opportunity for non-parties to comment in writing upon the proposed Settlement Agreement. The proposed Settlement Agreement was noticed in the *Federal Register* on May 1, 2024. Proposed Settlement Agreement, Clean Air Act Suit, 89 Fed. Reg. 35,091 (May 1, 2024). The notice and comment process is now complete. EPA received two comments, neither of which revealed facts or considerations that indicate that the Department of Justice or EPA should withhold consent.

9. Accordingly, NCC and Respondents notify the Court of their Settlement Agreement. Through the Settlement Agreement, NCC and Respondents indicate their concurrence that the Settlement Agreement is fair, reasonable, and in the public interest.

10. The administrative closure period is currently extended until October 1, 2024. Dkt. 48.1. NCC and Respondents request that the administrative closure period continue until the Settlement Agreement is performed.

11. Intervenor Nevada does not oppose the request to keep this case administratively closed.

DATED: July 19, 2024

Respectfully submitted,

 /s/ Megan Berge

Megan Berge
Sarah Douglas
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, D.C. 20001
(415) 291-6233

J. Mark Little
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1489

*Attorneys for Nevada Cement Company LLC*


 /s/ *Alexandra L. St. Romain*
Alexandra L. St. Romain
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
alexandra.st.romain@usdoj.gov
(202) 532-3284

*Counsel for Respondent U.S. Environmental Protection Agency and Michael S. Regan*

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2024, I electronically filed the foregoing using the Court's CM/ECF system which will send notification of such filing to the parties.

*/s/ Megan Berge*
Megan H. Berge
Baker Botts L.L.P.
700 K Street N.W.
Washington, D.C. 20001
(415) 291-6233

*Attorney for Nevada Cement Company*

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| NEVADA CEMENT COMPANY LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 23-682 |
| Petitioner, | | |
| v. | | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, Administrator, | | |
| Respondents. | | |
| NEVADA CEMENT COMPANY LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 23-1098 |
| Petitioner, | | |
| v. | | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, Administrator, | | |
| Respondents. | | |

**SETTLEMENT AGREEMENT**

This Settlement Agreement is entered into by Nevada Cement Company, LLC ("NCC") and the United States Environmental Protection Agency ("EPA") (collectively, the "Parties").

WHEREAS, NCC filed a petition for review challenging a final rule promulgated by EPA under section 110(a)(2)(D)(i)(I) of the Clean Air Act, 42 U.S.C. § 7410(a)(2)(D)(i)(I), entitled "Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone

National Ambient Air Quality Standards," 88 Fed. Reg. 9,336 (Feb. 13, 2023) ("SIP Disapproval"), as to the State of Nevada;

WHEREAS, NCC filed a petition for review challenging a final rule promulgated by EPA under section 110(a)(2)(D)(i)(I) of the Clean Air Act, 42 U.S.C. § 7410(a)(2)(D)(i)(I), entitled "Federal Good Neighbor Plan for the 2015 Ozone National Ambient Air Quality Standards," 88 Fed. Reg. 36,654 (Jun. 5, 2023) ("Good Neighbor Plan"), as to the State of Nevada;

WHEREAS, NCC has determined that the Good Neighbor Plan establishes nitrogen oxides ("$NO_X$") emissions limits for cement kilns which its cement facility in Fernley, Nevada cannot meet with the existing selective non-catalytic reduction ("SNCR") technology installed at that facility;

WHEREAS, the Good Neighbor Plan establishes a process whereby facilities may apply for and receive an alternative emissions limit pursuant to 40 C.F.R. 52.40(e);

WHEREAS, the Parties agree based on currently available information that no additional emissions control technology other than low-NOx burners ("LNB") will be required to address Good Neighbor Plan obligations for the cement kilns at NCC's Fernley facility, and that NCC intends to install such technology (to be operated in conjunction with the existing SNCR technology at the facility) depending on the results of an engineering analysis;

WHEREAS, the Parties anticipate that appropriate $NO_X$ emissions limits under the Good Neighbor Plan for the kilns at NCC's Fernley facility can be in place and complied with by the 2027 ozone season;

WHEREAS, NCC and EPA wish to implement this Settlement Agreement resolving all of NCC's challenges to the SIP Disapproval and to the Good Neighbor Plan related to NCC's

Fernley facility and thereby avoid protracted and costly litigation and to preserve judicial resources, without any admission or adjudication of fact or law;

NOW, THEREFORE, NCC and EPA, intending to be bound by this Settlement Agreement, hereby agree as follows:

1. No later than five business days after this Settlement Agreement is final pursuant to paragraph 8 of this Settlement Agreement, NCC and EPA shall file a joint motion with the Court in Case Nos. 23-682 and 23-1098 notifying the Court of this Settlement Agreement and requesting that NCC's claims in these cases be held in abeyance or remain held in abeyance. No later than ten business days after the date such joint motion is filed, NCC and EPA shall file a joint motion with the Court in Case No. 23-682 to lift the Court's stay of the SIP Disapproval as to the State of Nevada.

2. So long as neither Party invokes its remedy under this Settlement Agreement to lift the stay of proceedings in Case No. 23-682, EPA agrees that it will not take rulemaking action to apply the Good Neighbor Plan as to NCC's Fernley facility until the approval of the alternate limit, if any, established in accordance with the process detailed in this Settlement Agreement. In conjunction with approval of such alternate limit, EPA will take action to bring the Good Neighbor Plan into effect for NCC's Fernley facility. NCC shall not object or file comments opposing EPA's action so long as it is consistent with the terms of this Settlement Agreement. So long as NCC does not invoke its remedy under this Settlement Agreement to lift the stay of proceedings in Case No. 23-682, NCC agrees that it will not seek a judicial stay of the Good Neighbor Plan through the proceedings in Case No. 23-1098 or any case where NCC is a party or intervenor challenging the Good Neighbor Plan.

3. Within five (5) business days of execution of this Agreement, NCC will submit an Engineering Study Report to EPA concerning the feasibility and emissions-reduction efficiency of LNB at each kiln at its Fernley facility, as operated in conjunction with the existing SNCR at such kilns. Based on the information in the Engineering Study Report, NCC will propose to either move forward with installation of LNB and an associated Case-by-Case Emissions Limit Request ("CBCELR") or demonstrate why these findings suggest installation of control technology should not be required, justifying eligibility for a CBCELR based on existing technology according to the analysis prescribed in 40 CFR 52.40(e)(2). If EPA agrees with NCC, the Parties will proceed to do the work described in Paragraph 4 (in the case of installing LNB), or (in the case of not installing LNB), NCC will develop a CBCELR based on existing technology, pursuant to 40 CFR 52.40(e)(2). If EPA does not agree with NCC, the Parties may pursue dispute resolution under the process of Paragraph 7 or otherwise make good faith efforts to reconcile their differences. In the event agreement cannot be reached, NCC's sole remedy under this Settlement Agreement shall be the right to ask the Court to lift the stay of proceedings and set a briefing schedule for its claims in Case No. 23-682 (and/or the related protective petition in Case No. 23-1115 (D.C. Cir.)) and/or proceed with its separate challenge in Case No. 23-1098.

4. If the Parties agree that NCC will install LNB, then no later than March 27, 2026, NCC shall submit a CBCELR, pursuant to 40 CFR 52.40(e)(2). NCC shall propose a limit based on a 180-day demonstration period with LNB installed at the kilns at the Fernley facility, and operated in an optimized manner with the existing SNCR at such kilns. EPA will review NCC's CBCELR pursuant to 40 CFR 52.40(e) and the provisions of this Settlement Agreement. EPA will either (1) approve, (2) partially approve with proposed changes, or (3) reject NCC's

proposal. If EPA rejects the proposed limits, or if the Parties cannot agree on EPA's proposed changes, the Parties may pursue dispute resolution under the process of Paragraph 7 or otherwise make good faith efforts to reconcile their differences. In the event agreement cannot be reached, NCC's sole remedy under this Settlement Agreement shall be the right to ask the Court to lift the stay of proceedings and set a briefing schedule for its claims in Case No. 23-682 (and/or the related protective petition in Case No. 23-1115 (D.C. Cir.)) and/or proceed with its separate challenge in Case No. 23-1098.

5. Unless otherwise agreed by the Parties, the requirements of the Good Neighbor Plan affecting NCC's Fernley facility not directly implicated by the terms of this Settlement Agreement (including, without limitation, monitoring, reporting, and recordkeeping requirements) are not intended to be altered by this Settlement Agreement.

6. If EPA approves NCC's proposed alternative emissions limits for NCC's Fernley facility kilns, with or without installation of LNB, either in full or with changes that both Parties agree to pursuant to Paragraph 4, NCC shall not seek any further relief regarding any aspect of the SIP Disapproval or Good Neighbor Plan in Case Nos. 23-682 and 23-1098, and each party shall bear its own costs and attorneys' fees associated with all claims in such proceedings. NCC waives any right to challenge in any court or administrative proceeding, any portion of such approval by EPA that is consistent with the terms of this Settlement Agreement.

7. Dispute Resolution: If the Parties cannot reach agreement under Paragraphs 3 or 4, either Party may invoke dispute resolution procedures by notifying the other in writing and providing 21 days for objection.

    a. Informal Dispute Resolution: After the non-moving party consents in writing, or after the expiration of 21 days from written notification, NCC will submit a

list of two (2) independent contractors, one of which it will hire after EPA's written selection, which will be made within fifteen (15) days. The independent contractor will analyze the disputed report and underlying data and analysis. The independent contractors included on NCC's list will be qualified professionals with at least 5 years of experience relating to the operations of $NO_X$ emissions control technologies associated with cement kilns or similar sources. NCC must hire a different independent contractor in any subsequent Informal Dispute Resolution instances pursuant to this Settlement Agreement, unless the Parties agree otherwise. The independent contractor will prepare a report. If EPA and NCC cannot come to an agreement within 60 days of receiving the independent contractor's report, either Party may request Formal Dispute Resolution.

b. Formal Dispute Resolution: If informal dispute resolution is unsuccessful, either Party may invoke Formal Dispute Resolution by serving a Statement of Position stating any factual data, analysis, or opinion supporting its position and any supporting documentation. The other Party will then have 30 days to submit its own Statement of Position. The initiating Party may then file a motion requesting a court-ordered mediator to assist in resolving this dispute.

c. If the parties do not reach an agreement within 60 days after a mediator is appointed (or if, after informal dispute resolution, the Parties do not invoke formal dispute resolution), then either party may move the Court to lift the stay of proceedings and set a briefing schedule in Case No. 23-682 and/or proceed with the separate challenge in Case No. 23-1098.

8. The Parties agree and acknowledge that before this Settlement Agreement is final, EPA must provide notice in the *Federal Register* and an opportunity for public comment pursuant to Section 113(g) of the Clean Air Act, 42 U.S.C. § 7413(g). After this Settlement Agreement has undergone an opportunity for notice and comment, the EPA Administrator and/or the Attorney General, as appropriate, shall promptly consider any such written comments in determining whether to withdraw or withhold consent to the Settlement Agreement, in accordance with Section 113(g) of the Clean Air Act. This Settlement Agreement shall become final on the date that EPA provides written notice of such finality to NCC.

9. Nothing in the terms of this Settlement Agreement shall be construed to limit or modify the discretion accorded EPA by the Clean Air Act or by general principles of administrative law. No provision of this Settlement Agreement shall be interpreted as or constitute a commitment or requirement that EPA obligate funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341.

10. Nothing in the terms of this Settlement Agreement shall be construed to limit or modify the obligations of NCC to obtain permits pursuant to state and federal law to implement the provisions of this Settlement Agreement.

11. It is the intent of the Parties that the entry by any court of a preliminary stay of the Good Neighbor Plan that extends to NCC's Fernley facility pending judicial review shall not affect or abridge the terms of this Settlement Agreement. If any court, following merits adjudication, vacates the Good Neighbor Plan as to NCC's Fernley facility, and EPA has declined or exhausted all legal rights of appeal from such vacatur, this Settlement Agreement shall automatically terminate. If any court issues an opinion or judgment vacating the Good Neighbor Plan as to NCC's Fernley facility prior to any deadline or triggering date in this

Settlement Agreement, that deadline or triggering date shall be extended automatically one day for each day that opinion or judgment is not overturned.

12. The Parties may extend the dates set forth in this Settlement Agreement or otherwise modify this Settlement Agreement by a written agreement executed by counsel for the Parties. If a lapse in EPA's appropriations occurs within 120 days prior to any deadline in this Settlement Agreement, that deadline shall be extended automatically one day for each day of delay caused by the lapse in appropriations. EPA acknowledges that NCC's ability to meet the deadline in Paragraph 4 may be dependent in part on timely receiving any necessary permits from the State of Nevada. Should permitting delay occur that affects NCC's ability to meet this deadline and is beyond the control of NCC, the Parties shall make reasonable efforts to reach an agreement to extend the dates in the Settlement Agreement in writing to an appropriate later date. If alternative emissions limits for the Fernley facility have not been approved by October 15, 2026, either Party shall have the right to ask the Court to lift the stay of proceedings and set a briefing schedule in Case No. 23-682 and/or Case No. 23-1098.

13. Each party shall bear its own costs, including attorneys' fees, in this litigation, including attorneys' fees and costs associated with monitoring, overseeing, or implementing this Settlement Agreement, and including participation in any administrative proceedings contemplated by this Settlement Agreement.

14. Any notice required or made with respect to this Settlement Agreement shall be in writing and shall be effective upon receipt. Any notice or other documents required pursuant to this Settlement Agreement shall be sent to the following contact persons:

    For NCC:
    Megan H. Berge
    Baker Botts L.L.P.
    700 K Street N.W.

Washington, D.C. 20001
(415) 291-6233
(202) 639-7733
megan.berge@bakerbotts.com

J. Mark Little
Baker Botts L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1489
mark.little@bakerbotts.com

For EPA:
Alexandra L. St. Romain
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
alexandra.st.romain@usdoj.gov
MailProcessing_EDS.ENRD@usdoj.gov

15. This Settlement Agreement constitutes the complete and entire agreement between the Parties. All prior conversations, meetings, discussions, drafts, and writings of any kind are specifically superseded by this Settlement Agreement and may not be used by the Parties to vary or contest the terms of this Settlement Agreement or as evidence of the Parties' intent in entering into this Settlement Agreement.

16. It is expressly understood and agreed that this Settlement Agreement was jointly drafted by NCC and EPA. Accordingly, the Parties agree that any and all rules of construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Settlement Agreement.

17. This Settlement Agreement may be executed in any number of counterpart originals, each of which shall be deemed to constitute an original agreement, and all of which

shall constitute one agreement. The execution of one counterpart by any Party shall have the same force and effect as if that Party had signed all other counterparts.

18. Except as set forth in this Settlement Agreement, the Parties reserve and do not waive any and all other legal rights and remedies.

19. The undersigned representatives of each party certify that they are fully authorized by the party and that they represent to bind that respective party to the terms of this Settlement Agreement.

FOR NEVADA CEMENT COMPANY LLC:

_____
Megan H. Berge
Baker Botts L.L.P.
700 K Street N.W.
Washington, D.C. 20001
(415) 291-6233
(202) 639-7733

J. Mark Little
Baker Botts L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1489

*Counsel for Petitioner Nevada Cement Company LLC*

FOR EPA:

TODD KIM
Assistant Attorney General
Environment and Natural Resource Division

/s/ Alexandra L. St. Romain
Alexandra L. St. Romain
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
alexadra.st.romain@usdoj.gov

*Counsel for Respondent U.S. Environmental Protection Agency and Michael S. Regan*

Dated: __July 11__, 2024